# 10 CV   9300

Michael E. Salzman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
salzman@hugheshubbard.com

Attorneys for Petitioner
Broadcast Music, Inc.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -- -  X

BROADCAST MUSIC, INC.,
                                            :
                                            :
                             Petitioner,    :
                                            :
             -against-                      :
                                            :
AOL INC.,                                   :
                                            :
                            Respondent.     :
                                            :
                                            :
- - - - - - - - - - - - - - - - - - - -- -  X

10 Civ. _____(LLS)

Related to *United States v. Broadcast Music, Inc.*, 64 Civ. 3787 (LLS)

**PETITION**

Petitioner Broadcast Music, Inc. ("BMI"), by its attorneys, Hughes Hubbard &

Reed LLP, for its Petition states as follows:

1.      BMI seeks an order from the Court, pursuant to Sections XIII and XIV of the

BMI Consent Decree, confirming that written applications of AOL Inc. ("AOL") for a BMI

license cover only those specific websites and performing activities that are listed in the

application. BMI also requests that the Court direct AOL to identify in writing and by name and

URL any other specific websites, services or other transmission platforms for which it may

request a Section XIV license in the future, with such license requests effective as of the date of

their receipt by BMI for those newly identified properties.  BMI seeks this order because while

AOL did submit a list of Internet properties with its original application in 2007, AOL claimed

the list was non-exhaustive of the scope of the automatic license for which it was applying and to

which it claimed to be entitled.  BMI responded that AOL would be automatically licensed under

Section XIV only for those properties on the list, and demanded that AOL clarify and identify

any other properties it wished to license but AOL to date has refused to provide this fundamental

information to BMI.  Instead, AOL has insisted that it is entitled to an open-ended automatic

license under the BMI Consent Decree for whatever websites and other transmission facilities it

chooses to employ to make public performances of the BMI repertoire during the term of the

license —without having to provide a comprehensive list of those websites and other

transmission facilities to BMI in advance.  AOL has also played fast and loose with other

fundamental aspects of the license it seeks, selectively disclosing which portions of its websites

it wants excluded from its license because they are licensed by third parties, failing altogether to

disclose which upstream or downstream performances it wants included or excluded from its

license, and failing to update BMI on an ongoing basis as to any new and additional properties

AOL seeks to cover under the license application.

   2.   Although AOL reissued this license request in December 2009 following its spin-

off from Time Warner, and identified 31 new properties to be licensed in addition to most (but

not all) of the 22 listed in the 2007 application, AOL continued to maintain the position that its

list was non-exhaustive and that its automatic license extended to whatever uses of BMI music it

chose to make through other outlets.

   3.   BMI initially quoted a license fee for the properties listed in the May 2007

application, but withdrew its quote after AOL rejected the quote, expressed interest in pursuing

other fee models and refused to comply with BMI's demand for specificity. Lacking knowledge of the specific scope of the license requested, BMI has been unable to quote an appropriate blanket license fee for AOL's use of BMI music, and negotiation between the parties has been stalled for more than three years while AOL has continued to perform BMI music without paying for it. Once the Court clarifies the scope of the 2007 and 2009 license applications, and AOL provides BMI certain basic information requested herein about the properties for which AOL is seeking a license from BMI at this time, BMI will provide a fee quote for licenses authorizing performances of music in the BMI repertoire in the United States, effective as of the dates of AOL's respective applications for those properties for the period continuing through December 31, 2013. If, after BMI makes the quotations, BMI and AOL are unable to reach agreement on fees and terms for the licenses requested within the period designated in Section XIV, BMI would expect to petition this Court to determine the fees to be paid.

4.      In sum, the relief that BMI is requesting is an order confirming that AOL's two written license applications are limited to the properties named in the applications, and directing that AOL may only add properties to the application on a prospective basis upon receipt by BMI of a specific written request.

**The Parties**

5.      BMI is a music performing right licensing organization, with its headquarters at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007. BMI is a New York corporation that operates on a non-profit-making basis, licensing the public performing right in approximately 6.5 million musical works on behalf of over 475,000 composers, songwriters and music publishers to a wide variety of music users.

6.      Upon information and belief, AOL is a corporation with its principal place of

business at 770 Broadway, New York, New York 10003.  AOL is in the business of internet

services and media, advertising, publishing and social media.  Upon information and belief, a

predecessor of AOL merged with Time Warner Inc., on January 11, 2001, and AOL legally and

structurally separated from Time Warner Inc. effective December 9, 2009.

**AOL's Music Products and Services**

7.     Today, AOL says it is in the business of providing advertising-supported web

services through a set of web properties and products that, upon information and belief, attracted

an average of 45 million unique monthly users during the period June through August 2010.

AOL provides streaming of music contained in audio and audiovisual performances across its set

of subscription- and advertising-supported sites and services, both in the so-called "music areas"

of AOL.com (*e.g.* AOL Music, AOL Sessions), and through a large number of other sites and

services (not connected to or identified with the AOL portal), some of which are intended to

attract users and enhance the portal experience.

8.     Because AOL has changed its business model and product and service offerings

to the public repeatedly in recent years, its uses of music have changed frequently and

significantly since its negotiations with BMI for its prior license of the BMI repertoire, which

terminated in December 2006.  Therefore, BMI cannot, without obtaining additional information

from AOL as to its intended uses of the BMI repertoire, provide a rate quote that is both

reasonable for AOL and protective of the songwriters, composers and publishers that BMI

represents.   In fact, the prior practice of BMI and AOL under the 2006 license agreement and

2007 settlement were both predicated on AOL's submission of a specific list of AOL properties,

as was BMI's subsequent audit thereof.

**Section XIV(A) Application of AOL**

9.      Section XIV(A) of the BMI Consent Decree provides for a three-step process before a party may seek Court determination of a reasonable fee. *United States v. Broadcast Music, Inc.*, 1966 Trade Cas. (CCH) ¶ 71,941 (S.D.N.Y. 1966), *as amended by* 1996-1 Trade Cas. (CCH) ¶ 71,378 (S.D.N.Y. 1994) (the "BMI Consent Decree").  (A copy of the BMI Consent Decree is attached hereto as Exhibit A.)  First, a music user must make a written application to BMI.  Second, BMI must, within 90 days of receipt of such written application, provide the user a fee quote for the license requested.  Third, 60 days must pass during which the parties may seek to negotiate an acceptable license agreement before the applicant may seek this Court's determination, and a 90-day negotiation period must pass before BMI may seek such determination.

10.     By letter dated May 1, 2007, AOL applied for a license to perform publicly all of the compositions in BMI's repertoire "via the Internet and/or other transmission facilities by and through AOL's sites and services, inclusive of those identified on the attached schedule."[1]  (A copy of AOL's May 1, 2007 letter is attached hereto as Exhibit B.)

11.     By letter dated August 1, 2007, BMI formally responded to AOL's license fee request, requesting "various information and data from AOL in connection with the Service to help us accurately categorize AOL in the proper class and category to enable us to respond with the appropriate fees." (A copy of BMI's August 1, 2007 letter is attached hereto as Exhibit C.)

---

1.   The sites and services listed in the Schedule to AOL's May 1, 2007 letter are AOL (members only); AOL.com; AOL Music; AOL Radio; AOL Video; AOL City Guide; AOL Mobile; AOL Instant Messenger (AIM.com); AIMPages.com; IN2TV; Netscape Netcenter; Netscape.com; Radio@Netscape; Mapquest; Moviefone; TMZ.com; Compuserve; Compuserve.com; ICQ; Spinner; Winamp; and Shoutcast (excluding any third party programming made available through the Shoutcast web site).

BMI also provided a "final fee quote for the AOL Service subject to the negotiation of a complete and definitive license agreement that incorporates all other terms," which covered "a license grant for an Internet music service with music performances originating exclusively from AOL's web sites included in the AOL Service," but expressly excluded "third party distribution of such music performances, self-syndication across non-music AOL properties, or any other application." The "AOL Service" was defined in BMI's fee quote response as only covering the specific properties listed in AOL's application and excluded any and all other properties. *(See id.)*

12.    By letter dated August 13, 2007, AOL responded to BMI's August 1, 2007 letter, stating that "AOL's request for a license did not, and was not intended to, exclude any licensable public performances of BMI music made by AOL by or through its website operations, and thus includes whatever such performances which may occur beyond those associated with AOL's 'Internet music service.'" (A copy of AOL's August 13, 2007 letter is attached hereto as Exhibit D.)

13.    After numerous further attempts by BMI to obtain the necessary information and data from AOL and reach agreement on a reasonable license fee, BMI further specified its demand for additional information from AOL by letter dated April 20, 2009, stating that it "can not be placed in the position of quoting a license fee for unknown properties and uses of music by AOL" and "the scope of AOL's Internet license must be clearly delineated, and the burden is squarely on AOL to identify those activities and properties that AOL wishes to license, and notify BMI in writing." (A copy of BMI's April 20, 2009 letter is attached hereto as Exhibit E.) AOL failed to respond to BMI's April 20, 2009 letter, or a follow-up letter dated June 10, 2009.

14.    By letter dated December 22, 2009, AOL submitted a second application for a

license for the four-year period commencing January 1, 2010, to perform publicly all of the compositions in BMI's repertoire "via the Internet and/or other transmission facilities by and through AOL, Inc.'s websites and services, inclusive of those identified on the attached schedule."[2] (A copy of AOL's December 22, 2009 letter and "Schedule of Licensed AOL Websites and Services" is attached hereto as Exhibit F.) AOL stated in a footnote to the Schedule, "This schedule is deemed to include all successor websites and services to those identified in the list set forth hereon. *All of AOL's websites and services shall be deemed licensed even if not listed in this schedule.*" (*Id.*) (emphasis added).

15.     AOL's December 22, 2009 application to BMI simply reiterated the 2007 application, but on behalf of the new business entity resulting from the Time Warner spin-off. The list of sites and services that accompanied AOL's December 22, 2009 letter was different from the list that accompanied AOL's May 1, 2007 letter, but, upon information and belief, was a similarly incomplete list of AOL's music-performing outlets as of that date and is incomplete as of today.

16.     In the more than three years that have elapsed since AOL's May 2007 application, and despite numerous further requests from BMI, AOL has persisted in refusing to provide a comprehensive description of the distribution platforms and types of music uses for which it seeks a license. Instead, it has continued to demand a performing rights license for whatever

---

2.   The sites and services listed in the Schedule to AOL's December 22, 2009 letter are AOL (members only); AOL.com; AOL Diet; AOL Fitness; AOL Food; AOL Home; AOL Horoscopes; AOL Latino; AOL Living; AOL Music; AOL Personals; AOL Sessions; AOL Television; AOL Video; AOL Video-on-Demand; AIM (including AIM "Triton"); AOL CityGuide; AOL Mobile; AOL Shopping; Asylum.com; Bebo.com; Blackvoices.com; Compuserve; Compuserve.com; Engadget; In2TV; Lemondrop.com; Mapquest.com; Moviefone; Netscape Netcenter; Netscape.com; Noisecreep; Owl.com; Parentdish.com; Patch.com; Slashcontrol; Shelterpop.com; Spinner; ThatsFit.com; The Boot; The Boom Box; The Interface; Winamp; Gateway's, Hewlet [sic] Packard's and Verizon's version of the AOL subscription service; and Walmart's version of the AOL subscription service known as Netscape Connect.

activities it chooses to undertake that are "licensable public performances" under the Copyright Act. (*See* Exhibit D.)

17.    To make matters worse, AOL has also asserted that certain performances of music within the AOL portal and websites have already been licensed by unspecified third parties and disclaimed any responsibility to license or pay for them.

18.    AOL's request for such an indefinite, boundaryless, and everchanging license fails to provide BMI with adequate parameters to use in its calculation of an appropriate blanket license fee. Among the relevant information BMI needs are (1) the types of platforms to be used, (2) the subscription- or advertiser-supported nature of its business models, (3) the music-oriented or general-interest nature of its content, (4) the scheduled or on-demand nature of its programming; (5) the specific URL of each web site and/or service that AOL owns and/or operates for which it is seeking license, and the date such site or service launched; and (6) the audio-only or audiovisual nature of its music use. Therefore, AOL's request lacks the specificity necessary to allow BMI to "advise [AOL]…of the fee which it deems reasonable for the license requested." *See* BMI Consent Decree § XIV(A). The failure is more acute because of the "through to the audience" nature of the license application – it is absolutely imperative that BMI understand which downstream (or upstream) music users or content deliverers AOL is seeking to cover under the license.

19.    Although BMI and AOL have been negotiating off and on since May 1, 2007 in an attempt to reach agreement on final fees and terms, to date, BMI has been unable to reach agreement with AOL on a definitive license agreement, and, as stated above, AOL has refused to specify the properties for which it seeks a license.

20.    The parties entered into a settlement for the period prior to the license application,

but no interim or final fees have been paid for any period since May 1, 2007, a period of over three years.

21.     AOL has made no filing in this Court seeking determination pursuant to the BMI Consent Decree of a reasonable license fee.

**Jurisdiction**

22.     Jurisdiction is proper in this Court pursuant to the Court's authority to provide "orders and directions as may be necessary or appropriate for the construction or carrying out" of the BMI Consent Decree under Section XIII thereof, as well as the Court's rate-setting authority under Section XIV thereof.

23.     In addition, pursuant to Section XIV of the BMI Consent Decree, the Court has jurisdiction over the present Petition because:  (i) AOL has made written application for a reasonable fee pursuant to Section XIV of the BMI Consent Decree; (ii) BMI is required under the BMI Consent Decree to "advise the applicant in writing of the fee which it deems reasonable for the license requested"; and (iii) BMI has advised AOL that it requires AOL to provide additional information regarding the licenses requested, in order to determine a reasonable fee for such licenses without receiving an adequate response from AOL.  Accordingly, BMI may, pursuant to Section XIV of the BMI Consent Decree, seek the intervention of this Court to further the parties' negotiation of a reasonable license fee with respect to AOL's use of the BMI repertoire.

24.     Venue is proper in this district as a result of the express consent of AOL in applying for a license pursuant to Section XIV of the BMI Consent Decree.

**Relief Requested**

WHEREFORE, BMI respectfully requests that the Court enter an Order:

(a) confirming that AOL's 2007 and 2009 applications, and the Section XIV licenses AOL thereby obtained, are limited to the specific properties listed in those applications;

(b) directing AOL, if it wishes to avail itself of an automatic license under Section XIV of the BMI Consent Decree for properties in addition to those listed in its 2007 and 2009 applications, to supplement its applications by providing, for each one already listed and, on a prospective basis, for each newly listed additional Internet website, service, portion of its Internet portal, or any other transmission platform it intends the license to cover:

1. The name and internet address of the website (including third party websites), mobile telephone/PDA network, or other service;[3]

2. Description of business model (*e.g.*, subscription or advertising-supported);

3. Identification of types of programming (*e.g.*, audio only or audiovisual, music intensive, general entertainment, or news and information) so that BMI can then provide to AOL a quote of rates and terms for such license, effective as of the receipts of the license

---

[3] BMI reserves its right to object (in whole or in part) to AOL's request for a license intended to cover public performance by persons other than AOL, including third parties that host, transmit or otherwise utilize AOL content.

applications covering the respective services, and continuing through and including December 31, 2013;

(c)     requiring AOL to notify BMI in writing on a timely basis until such time as a final fee proceeding is commenced and resolved under Section XIV or a final fee agreement is negotiated between the parties of any future change to the intended scope of its license of the BMI repertoire, in order to allow BMI to revise its fee quote, if appropriate;

(d)     and requiring AOL to identify each source of programming content on AOL that AOL does not wish to obtain a license for, on either previously identified or newly identified properties, based on its position that the programmer either has or should have obtained its own BMI license covering AOL on a through-to-the-audience basis; and

(e)      for such other and further relief as this Court may deem just and proper.


Dated:  New York, New York
        December 13, 2010

                                    HUGHES HUBBARD & REED LLP

                                    By _____
                                              Michael E. Salzman
                                    One Battery Park Plaza
                                    New York, New York  10004
                                    (212) 837-6000
                                    salzman@hugheshubbard.com


                                              – and –

                                    Marvin L. Berenson
                                    Joseph J. DiMona
                                    Stuart Rosen
                                    7 World Trade Center
                                    250 Greenwich Street
                                    New York, New York 10007-0030
                                    (212) 220-3000

                                    Attorneys for Petitioner Broadcast Music, Inc.

# **<u>Exhibit A</u>**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

BROADCAST MUSIC, INC. and
RKO GENERAL, INC.,

        Defendants.

Civil No.
64-Civ-3787

### FINAL JUDGMENT

Plaintiff, United States of America, having filed its complaint herein on December 10, 1964, and defendant having filed its answer denying the substantive allegations of such complaint, and the parties by their respective attorneys having consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law herein and without this Final Judgment constituting evidence or an admission by either party with respect to any such issue:

Now, THEREFORE, before the taking of any testimony and without trial or adjudication of any issue of fact or law herein, and upon the consent of the parties hereto, it is hereby

ORDERED, ADJUDGED and DECREED as follows:

### I.

This Court has jurisdiction of the subject matter of this action and of the parties hereto. The complaint states claims for relief against the defendant under Sections 1 and 2 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," commonly known as the Sherman Act, as amended.

### II.

As used in this Final Judgment:

(A) "Defendant" means the defendant Broadcast Music, Inc., a New York Corporation;

(B) "Programming period" means a fifteen minute period of broadcasting commencing on the hour and at fifteen, thirty and

forty-five minutes past the hour without regard to whether such period contains one or more programs or announcements.

(C) "Defendant's repertory" means those compositions, the right of public performance of which defendant has or hereafter shall have the right to license or sublicense.

### III.

The provisions of this Final Judgment shall apply to defendant and to each of its subsidiaries, successors, assigns, officers, directors, servants, employees and agents, and to all persons in active concert or participation with defendant who receive actual notice of this Final Judgment by personal service or otherwise. None of the provisions of this Final Judgment shall apply outside the United States of America, its territories, and possessions.

### IV.

Defendant is enjoined and restrained from:

(A) Failing to grant permission, on the written request of all writers and publishers of a musical composition including the copyright proprietor thereof, allowing such persons to issue to a music user making direct performances to the public a non-exclusive license permitting the making of specified performances of such musical composition by such music user directly to the public, provided that the defendant shall not be required to make payment with respect to performances so licensed.

(B) Engaging in the commercial publication or recording of music or in the commercial distribution of sheet music or recordings.

### V.

(A) Defendant shall not refuse to enter into a contract providing for the licensing by defendant of performance rights with any writer who shall have had at least one copyrighted musical composition of his writing commercially published or recorded, or with any publisher of music actively engaged in the music publishing business whose musical publications have been commercially published or recorded and publicly promoted and distributed for at least one year, and who assumes the financial risk involved in the normal publication of musical works; provided, however, that defendant shall have the right to refuse to enter into any such contract with any writer or publisher who does not satisfy reasonable standards of literacy and integrity if the defendant is willing to submit to arbitration in the County, City

- 2 -

and State of New York the reasonableness and applicability of such standards, under the rules then prevailing of the American Arbitration Association, with any writer or publisher with whom defendant has refused so to contract.

(B) Defendant shall not enter into any contract with a writer or publisher requiring such writer or publisher to grant to defendant performing rights for a period in excess of five years, provided, however, that defendant may continue to license, as if under the contract, all musical compositions in which the defendant has performing rights at the date of termination of any such contract until all advances made by defendant to such writers and publishers shall have been earned or repaid.

(C) Upon the termination, at any time hereafter, of any contract with a writer or publisher relating to the licensing of the right publicly to perform any musical composition, defendant shall continue to pay for performances of the musical compositions of such writer or publisher licensed by defendant upon the basis of the current performance rates generally paid by defendant to writers and publishers for similar performances of similar compositions for so long as such performing rights are not otherwise licensed.

## VI.

(A)  Defendant shall not acquire rights of public performance in any musical compositions from any publisher under a contract which requires the officers, directors, owners or employees of such publisher to refrain from publishing or promoting musical works licensed through another performing rights organization, provided that nothing contained in this paragraph shall prevent defendant from entering into a contract with a publishing entity which requires such entity not to license any performance rights through any other performing rights organization during the term of the contract, and requiring that any works licensed by such officers, directors, owners or employees through another performing rights organization be licensed by a separate publishing entity which does not have a name identical with or similar to the name of any publishing entity with which defendant has contracted.

(B)  Defendant shall not enter into any agreement for the acquisition or the licensing of performing rights which requires the recording or public performance of any stated amount or percentage of music, the performing rights in which are licensed or are to be licensed by defendant.

- 3 -

# VII.

(A) Defendant shall make available at reasonable intervals, to all writers and publishers who have granted performance rights to it, a complete statement of the performance payment rates (to writers, those applicable to writers, and to publishers, those applicable to publishers), currently utilized by it for all classifications of performances and musical compositions.

(B) Defendant will not offer or agree to make payments in advance for a stated period for future performing rights which are not either repayable or to be earned by means of future performance to any writer or publisher who, at the time of such offer or agreement, is a member of or under direct contract for the licensing of such performing rights with any other United States performing rights licensing organization, provided that this restriction shall not apply (1) in the case of any such writer or publisher who at any time prior to said offer or agreement had licensed performing rights through defendant or (2) in the case of any such writer or publisher who is a member of or directly affiliated with any other United States performing rights licensing organization which makes offers or makes payments similar to those forbidden in this subparagraph to writers or publishers then under contract to defendant.

(C) Defendant shall include in all contracts which it tenders to writers, publishers and music users relating to the licensing of performance rights a clause requiring the parties to submit to arbitration in the City, County and State of New York under the then prevailing rules of the American Arbitration Association, all disputes of any kind, nature or description in connection with the terms and conditions of such contracts or arising out of the performance thereof or based upon an alleged breach thereof, except that in all contracts tendered by defendant to music users, the clause requiring the parties to submit to arbitration will exclude disputes that are cognizable by the Court pursuant to Article XIV hereof.

# VIII.

(A) Defendant shall not enter into, recognize as valid or perform any performing rights license agreement which shall result in discriminating in rates or terms between licensees similarly situated; provided, however, that differentials based upon applicable business factors which justify different rates or terms shall not be considered discrimination within the meaning of this section; and provided further that nothing contained in this section shall prevent changes in rates or terms from time to time by reason of changing conditions affecting the market for or marketability of performing rights.

- 4 -

(B) Defendant shall, upon the request of any unlicensed broadcaster, license the rights publicly to perform its repertory by broadcasting on either a per program or per programming period basis, at defendant's option. The fee for this license shall relate only to programs (including announcements), or to programming periods, during which a licensed composition is performed. The fee shall be expressed, at defendant's option, either (1) in dollars, (2) as a percentage of the revenue which the broadcaster received for the use of its broadcasting facilities or (3) in the case of sustaining programs or programming periods, as a percentage of the applicable card rate had the program or programming period been commercially sponsored. In the event defendant offers to license broadcasters on bases in addition to a per program or per programming period basis, defendant shall act in good faith so that there shall be a relationship between such per program or such per programming period basis and such other bases, justifiable by applicable business factors including availability, so that there will be no frustration of the purpose of this section to afford broadcasters alternative bases of license compensation.

IX.

(A) Defendant shall not license the public performance of any musical composition or compositions except on a basis whereby, insofar as network broadcasting by a regularly constituted network so requesting is concerned, the issuance of a single license, authorizing and fixing a single license fee for such performance by network broadcasting, shall permit the simultaneous broadcasting of such performance by all stations on the network which shall broadcast such performance, without requiring separate licenses for such several stations for such performance.

(B) With respect to any musical composition in defendant's catalogue of musical compositions licensed for broadcasting and which is or shall be lawfully recorded for performance on specified commercially sponsored programs on an electrical transcription or on other specially prepared recordation intended for broadcasting purposes, defendant shall not refuse to offer to license the public performance by designated broadcasting stations of such compositions by a single license to any manufacturer, producer or distributor of such transcription or recordation or to any advertiser or advertising agency on whose behalf such transcription or recordation shall have been made who may request such license, which single license shall authorize the broadcasting of the recorded composition by means of such transcription or recordation by all stations enumerated by the licensee, on terms and conditions fixed by defendant, without requiring separate licenses for such enumerated stations.

(C) Defendant shall not, in connection with any offer to license by it the public performance of musical compositions by

music users other than broadcasters, refuse to offer a license at
a price or prices to be fixed by defendant with the consent of the
copyright proprietor for the performance of such specific (i.e.,
per piece) musical compositions, the use of which shall be
requested by the prospective licensee.

## X.

(A) Defendant shall not assert or exercise any right or power
to restrict from public performance by any licensee of defendant
any copyrighted musical composition in order to exact additional
consideration for the performance thereof, or for the purpose of
permitting the fixing or regulating of fees for the recording or
transcribing of such composition; provided, however, that nothing
in this paragraph shall prevent defendant from restricting
performances of a musical composition in order reasonably to
protect the work against indiscriminate performances or the value
of the public performance rights therein or to protect the dramatic
performing rights therein, or, as may be reasonably necessary in
connection with any claim or litigation involving the performance
rights in any such composition.

(B) Defendant, during the term of any license agreements with
any class of licensees, shall not make any voluntary reductions in
the fees payable under any such agreements, provided, however, that
nothing herein shall prevent defendant from lowering any fees or
rates to any or all classes of licensees in response to changing
conditions affecting the value or marketability of its catalogue to
such class or classes, or where necessary to meet competition.

## XI.

For the purpose of securing or determining compliance with
this Final Judgment, and for no other purpose, duly authorized
representatives of the Department of Justice shall, on written
request of the Attorney General or the Assistant Attorney General
in charge of the Antitrust Division. and on reasonable notice to
defendant made to its principal office, be permitted, subject to
any legally recognized privilege:

(A) Access, during office hours of such defendant, to all
books, ledgers, accounts, correspondence, memoranda, and other
records and documents in the possession or under the control of
defendant relating to any matters contained in this Final Judgment;

(B) Subject to the reasonable convenience of defendant and
without restraint or interference from it, to interview officers or
employees of defendant, who may have counsel present regarding any
such matters.

Upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, defendant shall submit such reports in writing with respect to the matters contained in this Final Judgment as may from time to time be necessary to the enforcement of this Final Judgment.

No information obtained by the means permitted in this Section XI shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Executive Branch of the Plaintiff, except in the course of legal proceedings in which the United States is a party for the purpose of securing compliance with this Final Judgment, or, as otherwise required by law.

## XII.

All of the provisions of this Final Judgment shall become effective on the entry thereof, except as to paragraph C of Article VII, which shall not become effective until 90 days after the date of entry of this Final Judgment.

## XIII.

Jurisdiction is retained by this Court for the purpose of enabling either of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the provisions thereof, for the enforcement of compliance therewith and for the punishment of violations thereof.

To best preserve the independent conduct of defendant's music licensing activities, the jurisdiction retained by this Court over this Final Judgment shall be exercised by a Judge of this Court other than one to whom has been assigned any action in which a judgment has been entered retaining jurisdiction over any music performing rights licensing organization (e.g. ASCAP) other than defendant. No reference or assignment of any issue or matter under this Final Judgment shall be made to a Magistrate Judge or Master to whom has been referred or assigned any pending issue or matter in which any music performing rights licensing organization other than defendant as to which this Court has entered judgment retaining jurisdiction. (e.g. ASCAP) is a party.

## XIV.

(A) Subject to all provisions of this Final Judgment, defendant shall, within ninety (90) days of its receipt of a written application from an applicant for a license for the right

- 7 -

of public performance of any, some or all of the compositions in defendant's repertory, advise the applicant in writing of the fee which it deems reasonable for the license requested. If the parties are unable to agree upon a reasonable fee within sixty (60) days from the date when defendant advises the applicant of the fee which it deems reasonable, the applicant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall, upon receipt of notice of the filing of such application, promptly give notice thereof to the Assistant Attorney General in charge of the Antitrust Division. If the parties are unable to agree upon a reasonable fee within ninety (90) days from the date when defendant advises the applicant of the fee which it deems reasonable and no such filing by applicant for the determination of a reasonable fee for the license requested is pending, then defendant may forthwith apply to this Court for the determination of a reasonable fee and defendant shall promptly give notice of its filing of such application to the Assistant Attorney General in charge of the Antitrust Division. In any such proceeding, defendant shall have the burden of proof to establish the reasonableness of the fee requested by it. Should defendant not establish that the fee requested by it is a reasonable one, then the Court shall determine a reasonable fee based upon all the evidence. Pending the completion of any such negotiations or proceedings, the applicant shall have the right to use any, some or all of the compositions in defendant's repertory to which its application pertains, without payment of any fee or other compensation, but subject to the provisions of Subsection (B) hereof, and to the final order or judgment entered by this Court in such proceeding;

(B) When an applicant has the right to perform any compositions in defendant's repertory pending the completion of any negotiations or proceedings provided for in Subsection (A) hereof, either the applicant or defendant may apply to this Court to fix an interim fee pending final determination of what constitutes a reasonable fee. It is the purpose of this provision that an interim fee be determined promptly, and without prejudice as to the final determination of what constitutes a reasonable fee. It is further intended that interim fee proceedings be completed within 120 days of the date when application is made to fix an interim fee, subject to extension at the request of defendant or the applicant only in the interest of justice for good cause shown. If the Court fixes such interim fee, defendant shall then issue and the applicant shall accept a license providing for the payment of a fee at such interim rate from the date the applicant requested a license. If the applicant fails to accept such license or fails to pay the interim fee in accordance therewith, such failure shall be ground for the dismissal of its application. Where an interim license has been issued pursuant to this Subsection (B), the reasonable fee finally determined by this Court shall be retroactive to the date the applicant requested a license;

- 8 -

(C) When a reasonable fee has been finally determined by this Court, defendant shall be required to offer a license at a comparable fee to all other applicants similarly situated who shall thereafter request a license of defendant, but any license agreement which has been executed without any Court determination between defendant and another applicant similarly situated prior to such determination by the Court shall not be deemed to be in any way affected or altered by such determination for the term of such license agreement;

(D) Nothing in this Article XIV shall prevent any applicant from attacking in the aforesaid proceedings or in any other controversy the validity of the copyright of any of the compositions in defendant's repertory nor shall this Judgment be construed as importing any validity or value to any of said copyrights.

AND IT IS FURTHER ORDERED, ADJUDGED and DECREED that with respect to any music user heretofore licensed by defendant the license agreement of which expressly provides for determination by this Court of reasonable license fees or other terms for any period covered by such license, either defendant or such music user may apply to this Court for such determination provided that such license agreement provision has not otherwise expired.

Dated: New York, N. Y.
December 29, 1966

> EDWARD C. MCLEAN
> United States District Judge

JUDGMENT ENTERED DECEMBER 29, 1966

JOHN J. OLEAR, JR.
     Clerk

Dated: New York, New York
     November 18, 1994

> Robert P. Patterson, Jr.
> U.S.D.J.

- 9 -

# **<u>Exhibit B</u>**



**VIA US MAIL**

May 1, 2007

BMI
Business Affairs
320 West 57th Street
New York, NY 10019-3790
Attn: Barry Bronstein

RE:     AOL/BMI

Dear Barry:

  As we have discussed during our negotiations, I am writing to confirm that AOL requests a license, pursuant to the BMI consent decree, for the period commencing May 1, 2007 to perform copyrighted musical compositions in the BMI repertory via the Internet and/or other transmission facilities by and through AOL's sites and services, inclusive of those identified on the attached schedule.

  Please contact me at your earliest convenience to discuss this matter.

Best regards,

Encl.
cc:     Greg Gibson
  Kyle Johnson

David Tockman
Director, Entertainment Business Development | AOL
75 Rockefeller Center, 4:H15, New York, NY 10019
(917) 606-4810 (phone) | (917) 606-4941 (fax)
David.Tockman@corp.aol.com



Schedule

AOL (members only)
AOL.com
AOL Music
AOL Radio
AOL Video
AOL City Guide
AOL Mobile
AOL Instant Messenger (AIM.com)
AIMPages.com
IN2TV
Netscape Netcenter
Netscape.com
Radio@Netscape
Mapquest
Moviefone
TMZ.com
Compuserve
Compuserve.com
ICQ
Spinner
Winamp
Shoutcast (excluding any third party programming made available through the Shoutcast web site.)

David Tockman
Director, Entertainment Business Development | AOL
75 Rockefeller Center, 4:H15, New York, NY 10019
(917) 606-4810 (phone) | (917) 606-4941 (fax)
David.Tockman@corp.aol.com

# **Exhibit C**



Richard Conlon
Vice President
New Media & Strategic Development

## VIA Messenger Service and E-MAIL

David Tockman
Director, Entertainment Business Development
AOL, LLC
75 Rockefeller Plaza, 4:H15
New York, NY  10019


August 1, 2007


Re:    AOL Application for BMI License


Dear David:


BMI is in receipt of your letter requesting a license from BMI to cover AOL's public performance of BMI affiliated music via the Internet through AOL's web sites that were identified on the schedule attached to its license request (the "Service") for the period beginning May 1st, 2007.  Pursuant to Article XIV of the BMI Consent Decree, AOL will be licensed as of May 1st, 2007 to publicly perform BMI affiliated music in the United States in connection with the Service.

As you know, we have been in discussions since your application to better understand the complete nature of AOL's Service. We have also requested various information and data from AOL in connection with the Service to help us accurately categorize AOL in the proper class and category to enable us to respond with the appropriate fees. We have not received that data to date.  Thus, in response to your written request for a license fee quotation and limited to the information we have gleaned and our understanding of the AOL Service, the following is BMI's final fee quote for the AOL Service subject to the negotiation of a complete and definitive license agreement that incorporates all other terms:

1.    For DMCA-complaint radio programming:  1.75% of gross revenue attributable to DMCA-compliant radio programming



2.   For User Influenced radio programming:  2.15% of gross revenue attributable to user-influenced programming

3.   For on-demand audio services:  2.5% of gross revenue attributable to on-demand audio services

4.   For music related audio-visual programming: 1.0% of gross revenue attributable to audio-visual services

Please note that the above-referenced rates cover a license grant for an Internet music service with music performances originating exclusively from AOL's web sites included in the AOL Service. If AOL is interested in a fee quote to cover third party distribution of such music performances, self-syndication across non-music AOL properties, or any other application, AOL can request in writing for a fee quote to cover such activities.

BMI looks forward to continuing our discussions on how we can best serve your music licensing needs.

Very truly yours,

Richard Conlon

cc:   Kyle Johnson
      Jennifer Baltimore-Johnson, Esq.
      Barry Bronstein
      John Coletta, Esq.

# Exhibit D



**VIA EMAIL & US MAIL**

August 13, 2007

BMI
Business Affairs
320 West 57th Street
New York, NY 10019-3790
Attn: Richard Conlon

RE:    **AOL/BMI**

Dear Richard:

Thank you for your letter of August 1st.

In reference to the second-to-last paragraph thereof, I would like to make one clarification. AOL's request for a license did not, and was not intended to, exclude any licensable public performances of BMI music made by AOL by or through its website operations, and thus includes whatever such performances which may occur beyond those associated with AOL's "Internet music service".

Meanwhile, we look forward to continuing our discussions and reaching a final license agreement covering all of AOL's website operations in the very near future.

Of course, if you have any further questions, please do not hesitate to contact me.

Best regards,

*David*

cc:    Jennifer Baltimore
        Barry Bronstein
        Brian Heller

David Tockman
Director, Entertainment Business Development | AOL
75 Rockefeller Center, 4:H15, New York, NY 10019
(917) 606-4810 (phone) | (917) 606-4941 (fax)
David.Tockman@corp.aol.com

# **<u>Exhibit E</u>**



**Richard Conlon**
Vice President
New Media & Strategic Development

April 20, 2009

David Tockman
Director, Entertainment Business Development
AOL, LLC
770 Broadway 4th Floor
New York, New York 10003

### Re: AOL's Status Regarding Licensed and Unlicensed Properties

Dear David,

I am writing to you as a follow up to our meeting on March 20, 2009. There were two significant, pressing  issues that we raised during our meeting that have a material impact regarding AOL's licensed and unlicensed exploitations of the BMI repertoire and on the compensation for BMI's songwriters and music publishers for these uses:

### 1.   AOL has Voluntarily Created a Market Precedent for Performing Rights License Fees in Musical Works

Given the recent rulings in the ASCAP rate court and the subsequent voluntary marketplace agreement entered into between AOL and ASCAP, a market has been made.  In order for BMI to enter into a voluntary agreement with AOL, we need a license fee structure that reflects the market value already set by AOL with its other PRO agreement.  The AOL/ ASCAP agreement in conjunction with the decision of the ASCAP rate court decision creates a benchmark that should not be ignored.

We noted in our meeting that, lacking some form of assurance to the contrary, we would have to assume that AOL has agreed to annual fees in the $ 5 to $7 million dollar range based on the AOL fee amounts noted in the original court papers released last Spring

David Tockman
April 20, 2009
Page 2

and subsequent developments.  Fees of this scale would value AOL's license fee obligation to BMI in the $ 15 to $ 20 million range for the 2007 to 2009 period.


**2.   BMI has previously informed AOL that it is currently unlicensed to publicly perform BMI-licensed musical works on a number of properties that AOL has acquired, as explained below.**


AOL's application for a BMI license on May 1st, 2007 included a schedule of specific AOL properties for which AOL was seeking a license.  BMI provided a fee quote response on August 1, 2007, but only for the AOL Service that is comprised of the specific web sites and AOL properties identified in the schedule attached to AOL's application of May 1st.  In response, you wrote a letter to me dated August 13, 2007 in which you purport to expand the application to an unspecified scope concerning unidentified Internet and non-Internet performances on un-named properties.  We have advised you that BMI rejects this wholly non-specific and unilateral broadening of the concept of a Rate Court Application and reasserts our claims made both verbally and in email that AOL has significant copyright infringement exposure for any unlicensed performances of BMI represented musical works.  BMI can not be placed in the position of quoting a license fee for unknown properties and uses of music by AOL.

Additionally,  as we have previously discussed, there are web sites owned by AOL which  were listed on AOL's May 2007 schedule that AOL acquired prior to its license application that were also not licensed under any prior BMI license (i.e. the last license that terminated 12/06) or settlement agreement (i.e. the settlement in effect from 1/07 – 4/07).  One example of such previously unlicensed sites not covered by prior agreements is www.TMZ.com. BMI is also aware that AOL purchased www.Bebo.com in May 2008.  Bebo submitted its own consent decree license application with BMI effective November 2008, but that application was not automatically assignable to AOL, and there are unlicensed periods prior to Bebo's May 2008 license application.  Therefore, AOL remains currently unlicensed for a number of properties not covered under any of the above.  A few other examples of such unlicensed AOL properties are: http://www.theboot.com;  http://www.theboombox.com;  and  http://www.gamedaily.com.

BMI's position is that the scope of AOL's Internet license must be clearly delineated, and the burden is squarely on AOL to identify those activities and properties that AOL wishes to license, and notify BMI in writing.  BMI will consider them licensed as of the date of receipt of such written notification.

In the hope of avoiding litigation, BMI is reaching out to you once again to attempt to negotiate a  license agreement with AOL that would cover all prior periods and all of AOL's properties and web sites, both licensed pursuant to AOL's application, and unlicensed, i.e. those that are not covered by a prior BMI agreement or AOL license application.   To this end we would appreciate a response to BMI's proposed deal

David Tockman
April 20, 2009
Page 3

structure for a license running through December 2010 at a minimum guaranteed fee as negotiated between the parties and including a Most Favored Nations clause against any market benchmark agreement, settlement or final litigated determination of fees, or combination thereof, in total, for that time period with any other performing rights organization.

If an agreement is not reached by May 31, 2009, BMI will demand that AOL enter into a tolling agreement to preserve BMI's claims of copyright infringement for all unlicensed periods.

BMI reserves all rights and legal remedies available to it in connection with this matter, including, and not limited to (i) seeking immediate interim fee payments to BMI, retroactive to the appropriate date(s), (ii) seeking a rate court determination of reasonable license fees for the licensed period, plus interest, and (iii) seeking damages for copyright infringement for the unlicensed properties.

I look forward to hearing back from you.

Sincerely yours,

Richard Conlon

Cc:

Marvin L. Berenson,  General Counsel, BMI
Barry Bronstein, BMI
Jennifer Baltimore Johnson,  Assistant General Counsel, AOL
Karim Naraghi, Business Development Director AOL LLC

# **<u>Exhibit F</u>**



December 22, 2009

<u>Via Facsimile:  212-830-6421 & Fed Ex</u>

Mr. Richard Conlon
Vice President, New Media & Strategic Development
Broadcast Music, Inc.
320 W. 57th Street
New York, NY 10019-3790

Re:  <u>United States v. BMI - Application of AOL, Inc.</u>

Dear Richard:

This letter serves as AOL, Inc.'s formal request for a license for the four year period
commencing January 1, 2010, pursuant to Article XIV of the Amended Final Judgment
entered in *United States v. Broadcast Music, Inc.* ("the BMI Consent Decree"), to perform
copyrighted musical compositions in the BMI repertory via the Internet and/or other
transmission facilities by and through AOL, Inc.'s websites and services, inclusive of those
identified on the schedule attached to this letter.

BMI's fee quotations should be "through-to-the-audience," encompassing any public
performances for which a license is required as rendered by AOL's websites and services,
either directly from such websites and services, to AOL's clients or "flash players" or
through any affiliated entities through which AOL may distribute its services.  This request
is sent without prejudice to AOL, Inc.'s other legal rights and remedies, including whether
any public performance license is required at all for the activities in which AOL, Inc. is
engaged.

We look forward to hearing from you soon.

Best regards,

*David Tockman*
David Tockman

**Aol.**
**770 Broadway, 4th Floor, New York, NY 10003**



## SCHEDULE OF LICENSED AOL WEBSITES AND SERVICES[1]

AOL (members only)
AOL.com
AOL Diet
AOL Fitness
AOL Food
AOL Home
AOL Horoscopes
AOL Latino
AOL Living
AOL Music
AOL Personals
AOL Sessions
AOL Television
AOL Video
AOL Video-on-Demand
AIM (including AIM "Triton")
AOL CityGuide
AOL Mobile
AOL Shopping
Asylum.com
Bebo.com
Blackvoices.com
Compuserve

//

(cont.)

---

[1] This schedule is deemed to include all successor websites and services to those identified
in the list set forth hereon.  All of AOL's websites and services shall be deemed licensed
even if not listed in this schedule.

**Aol.**
**770 Broadway, 4th Floor, New York, NY 10003**



Compuserve.corn
Engagdet
In2TV
Lemondrop.com
Mapquest.com
Moviefone
Netscape Netcenter
Netscape.com
Noisecreep
Owl.com
Parentdish.com
Patch.com
Slashcontrol
ShelterPop.com
Spinner
ThatsFit.com
The Boot
The Boom Box
The Interface
Winamp
Gateway's, Hewlet Packard's and Verizon's version of the AOL subscription service
Walmart's version of the AOL subscription service known as Netscape Connect

**Aol.**
**770 Broadway, 4th Floor, New York, NY 10003**